UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>        Defendants. | Case No. 25-cv-06482-WHO<br><br>**ORDER DENYING TRO WITHOUT PREJUDICE AND GRANTING MOTION TO PROCEED UNDER A PSEUDONYM**<br><br>Re: Dkt. Nos. 2, 3, 4 |

Pro se plaintiff John Doe ("Doe" or "Plaintiff") [1], who has applied for political asylum in the United States, filed a Motion for a Temporary Restraining Order ("TRO") to enjoin defendants United States Citizen and Immigration Services ("USCIS") and the United States Department of Homeland Security ("DHS") (together, the "Government") from moving his case to immigration court or initiating removal proceedings against him. Dkt. No. 2 (TRO Request). He also asks that I enjoin the Government from "[d]estroying or altering contradictory administrative records," and

---

[1] Doe has also moved to proceed under a pseudonym. Dkt. No. 3. The Ninth Circuit has identified the factors courts must consider when determining whether to allow a party to proceed anonymously. *Doe v. Kamehameha Schools*, 416 F.3d 1025, 1034 (9th Cir. 2005). Doe meets the *Kamehameha* criteria. His case involves information of a "highly sensitive or personal nature" insofar as it discusses allegations of political persecution by his home country, he identifies a risk of retaliatory harm (both mental and physical) were his identity to become known to his home government, and he identifies a risk to vulnerable individuals (namely his family members still living in his home country) were his identity to become known and connected back to them. Finally, his case directly challenges government activity. All of these factors weigh in support of Doe proceeding anonymously. His identity has been made known to the parties in this case via the filing of a sealed affidavit. As such, the Government is capable of defending itself in this action. Accordingly, and for the reasons explained above, Doe's motion to proceed under a pseudonym is GRANTED.

Because this Order references some information sensitive to Doe's case, I will file a redacted version on the public docket, and a sealed version of the unredacted Order for the benefit of the parties.

that I order the Government to "compile and submit the complete administrative record within 14 days." *Id.* Because Doe has not yet shown that he is likely to prevail on the merits of his Administrative Procedure Act, constitutional, or other statutory claims, and because he has not shown exigent circumstances necessitating the urgent relief he seeks, I will DENY the TRO without prejudice. My reasons are explained below. If plaintiff knows or learns of facts that would change my analysis, or if circumstances change such that the risks he faces are more imminent, then he may amend his TRO request accordingly.

## BACKGROUND

Plaintiff challenges what he believes is an unreasonable delay in processing his asylum application, as well as procedural errors throughout that process and ambiguity in the status of his application. He asserts claims under the Administrative Procedure Act ("APA") for unreasonable delay in processing his application, a Fifth Amendment claim for violation of due process, and related statutory claims alleging procedural errors by USCIS related to the processing of his asylum application. *See generally* TRO Request [Dkt. No. 2]; Complaint [Dkt. No. 1].

While his TRO Request and Complaint do not identify how long his application has been pending (that information is redacted), a supplemental affidavit filed under seal provides that information; his application has been pending for ███ days as of the date of this Order. Doe says that the USCIS system shows contradictory statuses concerning his application, registering it as "closed" in some contexts and "pending" at others. *See generally*, TRO Request. He says that on ███████████ USCIS recorded that "Decision Was Mailed" in its online system and marked his case as "closed," but says he never received any decision. Then, eight months later, USCIS issued him an "C08 work authorization card," despite federal regulation that he interprets as providing that such cards may only be issued to applicants whose applications are "pending before an asylum officer." TRO Request at 3 (citing 8 C.F.R. § 208.7(b)).[2] He identifies these discrepancies

---

[2] 8 C.F.R. § 208.7(b) provides as follows: "(b) Renewal and termination. Employment authorization shall be renewable, in increments to be determined by USCIS, for the continuous period of time necessary for the asylum officer or immigration judge to decide the asylum application and, if necessary, for completion of any administrative or judicial review.
   (1) If the asylum application is denied by the asylum officer, the employment authorization shall terminate at the expiration of the employment authorization document or 60 days

2

as the basis for a Fifth Amendment due process violation claim and for various statutory claims alleging that USCIS has violated its own internal procedures.

The harm that Doe identifies in his TRO Request is that "USCIS has failed to adjudicate his asylum application while maintaining contradictory administrative records that create an impossible procedural trap." TRO Request at 2. He says that this "systematic dysfunction threatens to deprive Plaintiff of fundamental due process rights and risks sudden case transfer that would strip this Court of jurisdiction." TRO Request at 2. He also worries that administrative records necessary to adjudicating his claims will be destroyed. Doe offers no evidence that his case will soon be transferred to immigration court (indeed, the very issue he appears to challenge across his papers is that it has *not* been moved along quickly enough) and offers no reason to fear that the defendants will destroy his case files.

## ORDER DENYING TRO REQUEST

For the reasons articulated below, Plaintiff's TRO Request is DENIED, without prejudice. If Doe learns of new facts that change the analysis below or make his need for relief more urgent, he may amend his Motion for a Temporary Restraining Order accordingly.

### A. Legal Standard for a Temporary Restraining Order

The substantive standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3]

---

after the denial of asylum, whichever is longer.
(2) If the application is denied by the immigration judge, the Board of Immigration Appeals, or a Federal court, the employment authorization terminates upon the expiration of the employment authorization document, unless the applicant has filed an appropriate request for administrative or judicial review."

3

that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. Alternatively, an injunction may issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," provided that the plaintiff can also demonstrate the other two *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (citation and internal quotation marks omitted). Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

### B. Applying the *Winter* factors to Doe's case

Doe has not shown that he is likely to proceed on the merits of his claims, which is the first and perhaps most important *Winter* factor.

With respect to his APA claim for unreasonable delay, plaintiff filed his I-589 asylum application on ▮▮▮▮, seeking political asylum from persecution. ▮▮▮ days have elapsed between Doe's application being filed and the date of this Order. The APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." *Ou v. Johnson*, No. 15-CV-03936-BLF, 2016 WL 7238850, at *2 (N.D. Cal. Feb. 16, 2016) (quoting 5 U.S.C. § 555(b)). The dispositive question for Doe's APA claim is whether USCIS has "unreasonably delayed in performing its duty." *Vaz*, 33 F.4th at 1135.

To answer this question, courts turn to the "so-called *TRAC* factors." *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). Those factors are:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 507 n.7 (cleaned up). The first *TRAC* factor is the most important but is not determinative. In this circuit, courts are required to consider all of the factors. *In re A Cmty. Voice*, 878 F.3d 779,

4

786 (9th Cir. 2017).  Moreover, "[c]ourts measure the period of delay from the last government action to the issuance of the opinion." *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022).

"The second *TRAC* factor considers whether Congress has provided an indication of the speed with which it expects an agency to act." *Jain v. Jaddou*, No. 21-cv-03115-VKD, 2023 WL 2769094 at *6 (N.D. Cal. Mar. 31, 2023).  Courts have acknowledged that Congress has indeed "provided a clear timetable for the processing of asylum applications," including 8 U.S.C. § 1158(d)(5)(A)'s expectation that interviews be scheduled within 45 days. *Varol*, 420 F. Supp. 3d at 1097.  However, those same courts have also held that such "timing requirements are not mandatory" and "d[o] not outweigh the rule of reason which supports the USCIS policies which have caused the challenged delays." *Id.*  Instead, Congress has "indicated that USCIS retains limited discretion as to the timing of the adjudication of asylum applications under exceptional circumstances." *Yan*, 2023 WL 4053410, at *4.  Courts considering asylum applications like Doe's, which were filed under the USCIS's current policy of evaluating such applications on a "last-in-first-out" basis, have "generally found … delays of four years or less not to be unreasonable under the APA." *Ou*, 2016 WL 7238850, at *3 (collecting cases); *Su v. Mayorkas*, 698 F. Supp. 3d 1168, 1175 (N.D. Cal. 2023) ("even delays of over five years" can be reasonable).  Here, the ▮▮▮ delay that Doe has identified does not weigh in his favor for the APA claim.

The third and fifth *TRAC* factors overlap, both with each other and, in the context of this case, with the second *Winter* factor.  Those factors consider "whether human health and welfare are at stake and the nature and extent of the interests prejudiced by delay." *Id.*, at 1178-79.  None favors Doe's APA claim.

While I do not minimize the fear that Doe is experiencing as a result of the uncertain status of his asylum application, the facts alleged suggest that he is not at immediate risk of removal and does not face other imminent or irreparable harm.  One of the problems he identifies, which I discuss in more detail below, is that "[e]ight months after claiming Plaintiff's case was 'closed' USCIS issued him a C08 work authorization card." TRO Request at 3.  He argues that "[u]nder [8 C.F.R. § 208.7(b)] C08 cards may only be issued to applicants whose asylum applications are

5

'PENDING before an asylum officer.'" *Id.* While this alleged discrepancy may ultimately serve as the basis for his claim asserting due process violations, Doe is now in possession of a work authorization card. That weighs against granting the emergency relief he seeks. He would no doubt benefit from the acceleration of his asylum application and from clarification about the status of that application, but his possession of a work authorization card minimizes the prejudice he faces from continued delay.

Doe also identifies what he says are procedural issues with respect to his asylum application, which form the basis of his Fifth Amendment due process claim and other, related statutory claims. USCIS apparently issued this work authorization card eight months after recording that Doe's case was "closed" without issuing a decision one way or another as to his application. TRO Request at 3. Doe identifies this as a breakdown in USCIS's procedural process, arguing that such cards only issue when cases are "pending before an asylum officer." *Id.* (citing 8 C.F.R. § 208.7(b)). In his Complaint, Doe says that USCIS issued a "Notice of Intent to Deny" ("NOID") that violated various USCIS administrative procedures. Complaint at pp. 12-13. He says that some of the dates in the NOID related to his asylum application process were incorrect, and that USCIS provided him too little time to respond to the NOID. *Id.*

The record before me is too incomplete to evaluate the likelihood of success on his Fifth Amendment claim for violation of due process or related statutory claims arising from these alleged internal errors. Doe has not shown that he is likely to prevail on its merits and the nature of the claim disfavors the emergency relief; he is in possession of a work authorization card. While this may eventually serve as evidence of internal process breakdown, for now, it also lessens Doe's risk of removal.

The second *Winter* factor, which I already discussed concerning the *TRAC* factors, does not favor emergency relief. Doe says that he faces "jurisdictional," "mental" and physical harm absent the injunction he requests. He worries that if I do not issue the injunction, the Government will "suddenly transfer[] [his] case to immigration court," and "this Court would lose jurisdiction over the procedural violations." TRO Request at 5. He also explains that his mental health is suffering as a result of uncertainty as to the status of his asylum application and identifies that he

1   has a "[d]ocumented anxiety disorder with exacerbation requiring increased psychiatric
2   treatment." *Id.*  Finally, he worries that absent the relief sought, the Government will destroy
3   administrative records he needs to prove his case. *Id.*   While I do not minimize the stress that
4   Doe is under in the shadow of his uncertain asylum application, the risk of injury he has outlined
5   does not support granting the TRO at this time.
6       If circumstances change, and Doe becomes aware of a more urgent risk of removal, or if he
7   can produce some credible evidence that the Government has or is planning to destroy relevant
8   records, he may amend his TRO request, and I will consider new evidence.[3]  On this record,
9   however, the TRO request is DENIED, without prejudice.  Doe shall serve a copy of this Order on
10  the defendants.

    **IT IS SO ORDERED.**

Dated:  August 14, 2025

_____
William H. Orrick
United States District Judge

---

[3] Because I am denying the TRO on the basis of the first two *Winter* factors disfavoring the emergency relief Doe seeks, I do not reach the second two *Winter* factors, which consider the balance of equities and the public interest.

7