UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　Defendants. | Case No. 25-cv-06482-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS AND MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 21, 23, 24, 27, 32, 34, 35 |

　　Defendants seek to dismiss plaintiff John Doe's complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Because Doe's claims cannot be addressed by a district court or are moot, I agree that I lack subject matter jurisdiction over this dispute. Accordingly, defendants' motion to dismiss is GRANTED.[1]

## BACKGROUND

　　Doe is a ▉ national who entered the United States in ▉ on a B-2 tourist visa. *See* Complaint ("Compl.") [Dkt. No. 1] at 7. On ▉, Doe filed an I-589 asylum

---

[1] Doe also filed two motions to seal, a motion to file a sur-reply, and a motion to appoint a Mandarin courtroom reporter. *See* Dkt. Nos. 14, 27 (motions to seal); 34 (sur-reply); 35 (Mandarin interpreter). Doe's motions to seal are GRANTED. Doe requests that I seal various USCIS documents relating to his asylum application, as well as portions of exhibits in his Opposition to the motion to dismiss, as they contain "information that could lead to identification of Plaintiff or expose him to safety risks." Dkt. No. 27 at 1. I agree that such concerns satisfy the "compelling reasons" standard for sealing, and that the documents and portions of the exhibits identified by Doe in Dockets 14 and 27 should be sealed. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1096 (E.D. Cal. 2025) (finding compelling reasons to seal documents related to asylum applications "due to [their] potential to identify Petitioner and the sensitive nature of the allegations"). Doe's motion to file a sur-reply is also GRANTED; I will consider the sur-reply attached to his motion when discussing the issue of Doe agreeing to voluntary departure. Finally, Doe's motion to appoint a Mandarin interpret is DENIED as moot, as I did not hold oral argument for this motion.

1  application with the United States Customs and Immigration Services ("USCIS"), alleging
2  political persecution and retaliation by the ███████████████. *Id.* at 8–9. While his
3  application was processing, Doe claims that USCIS committed numerous procedural violations
4  that form the basis of this action. First, he asserts that USCIS allowed for his application to pend
5  for over ███ days, despite statutory authority suggesting that asylum applications be "decided
6  within 180 days of filing."[2] *See id.* at 10. He also maintains that the USCIS system showed
7  contradictory statuses concerning his application, registering it as "closed" in some contexts and
8  "pending" in others. *See id.* at 10–11. For instance, Doe received a C08 work authorization card
9  after the USCIS closed his application, despite such work permits only being available for those
10 with pending asylum applications. *See* 8 C.F.R. § 208.7(b). As a result, Doe filed this action
11 against defendants on August 1, 2025, alleging various violations of the Administrative Procedure
12 Act ("APA") and the Federal Torts Claims Act ("FTCA"). *See* Compl. at 18–37.
13      On August 22, 2025, USCIS issued a referral notice for Doe's asylum application and a
14 Notice to Appear ("NTA") requiring Doe to appear before an immigration judge in the Executive
15 Office for Immigration Review ("EOIR") on September 24, 2025. *See* Emergency Amended
16 Motion for Temporary Restraining Order ("Second TRO") [Dkt. No. 13] at 2; Second TRO Ex. A
17 ("Referral Notice") [Dkt. No. 13-4] at 1. In its referral letter, USCIS noted that while Doe failed
18 to provide grounds to show persecution in ███, this decision was "**not a denial of [his] asylum**
19 **application**." Referral Notice at 1 (emphasis in original). Rather, Doe would have the
20 opportunity to "request that the immigration judge consider [his] asylum application, and [he] may
21 amend [his] application when [he] appear[ed] before the immigration judge." *Id.* The letter also
22 clarified that the immigration judge in the EOIR would "evaluate [his] asylum claim
23 independently and [was] not required to rely on or follow the decision made by USCIS." *Id.*
24      On August 22, 2025—the same day as the USCIS referral notice—Doe filed a Temporary
25 Restraining Order ("TRO"), requesting that I (1) stay the removal proceedings, (2) preserve

---

[2] Doe specifically references 8 U.S.C. § 1158(d)(5)(A)(iii), which provides: "[I]n the absence of exceptional circumstances, final administrative adjudication of [an] asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed."

2

federal jurisdiction over his claim, and (3) cure the alleged procedural violations in the USCIS record. *See* Second TRO at 4–5. Defendants then filed a joint motion to dismiss and opposition to the TRO on September 3, 2025. *See* Motion to Dismiss and Opposition to Plaintiff's Motion for TRO ("Mot.") [Dkt. No 21]. Doe filed his opposition to the motion to dismiss on September 4, 2025, *see* Plaintiff's Reply in Support of Emergency TRO ("Oppo.") [Dkt. No. 24], and defendants filed their reply on September 26, 2025. *See* Defendant's Reply in Support of their Motion to Dismiss ("Repl.") [Dkt. No. 32].

On September 18, 2025, I denied Doe's request for a TRO on the grounds that the "risk of injury outlined" did not support granting emergency relief. *See* Order Denying Plaintiff's Amended Motion for a TRO [Dkt. No. 29] at 1. On the question of jurisdiction, I noted that "to the extent that I have jurisdiction at the moment, I will have it" when deciding the motion to dismiss. *Id.*[3]

On September 24, 2025, Doe appeared before an immigration judge at the EOIR, who granted him pre-conclusion voluntary departure under 8 U.S.C. § 1229a, with a departure deadline of January 22, 2026. *See* Plaintiff's Notice of Recent Development ("Notice") [Dkt. No. 33] at 1; Notice Ex. A ("Order of the Immigration Judge"). Both parties waived their right to appeal the voluntary departure decision. Notice at 2.

**LEGAL STANDARD**

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See Safe Air Safe Air for*

---

[3] Citing to no authority, Doe asserted that "unless emergency relief [was] granted," I would lose jurisdiction over his case the moment the EOIR begins its removal proceedings against Doe. *See* Second TRO at 5.

3

1  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the jurisdictional
2  challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d
3  358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are
4  insufficient "on their face" to invoke federal jurisdiction. *See Safe Air*, 373 F.3d at 1039. To
5  resolve this challenge, the court assumes that the allegations in the complaint are true and draws
6  all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)).

## DISCUSSION

The parties' briefing raises thorny issues regarding immigration law and subject matter jurisdiction. This case is also complicated by how it has developed since defendants first filed their motion to dismiss, as Doe has now been provided with a voluntary departure date of January 22, 2026. It is also complicated by the fact that Doe admitted to using artificial intelligence to draft his opposition, which presented challenges to determining the authenticity of his arguments. While I do not downplay Doe's concerns about the status of his immigration case, as I explain below, I do not see how this case can proceed any further in federal district court.

**A.    8 U.S.C. § 1252(g)**

Defendants first argue that I lack subject matter jurisdiction to consider "any challenge to [their] decision to initiate removal proceedings through the filing of an NTA." Oppo. at 11. In their view, 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any

4

cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings . . . under this chapter," controls. *Id.* This provision, as defendants read it, provides the Secretary of Homeland Security (and therefore, the USCIS) with the ultimate "discretion" over matters relating to removal proceedings, and precludes district courts from considering such cases. *See id.* at 11–12. Instead, judicial review is directed to appellate courts "following issuance of an administratively final removal order." *See id.* at 12; 8 U.S.C. § 1252(a)(1); 8 U.S.C. § 1252(a)(5); 8 U.S.C. § 1252(b)(9).

While 8 U.S.C. § 1252(g) does establish the jurisdictional boundaries for a district court's review of immigration proceedings, the Supreme Court has clarified that this provision must be read narrowly. In *Reno v. American-Arab Anti-Discrimination Committee*, the Court held that § 1252(g) applies "only to three discrete actions"—the "decision or action" to "*commence proceedings*, *adjudicate* cases, or *execute* removal orders." 525 U.S. 471, 482 (1999) (emphasis in original). Here, Doe raises claims regarding alleged procedural defects that occurred while the USCIS processed his I-589 asylum application. As Doe candidly admits, his complaint does not contest the USCIS's decision regarding his application; rather, he seeks to "[r]econcile and correct all . . . records regarding [his] asylum case." Oppo. at 8. In my view, claims regarding procedural defects may not fall squarely within the USCIS "commenc[ing] proceedings, adjudicat[ing] cases, or execut[ing] removal orders." *See Reno*, 525 U.S. at 482. Accordingly, 8 U.S.C. § 1252(g) likely does not bar me from considering Doe's procedural due process challenges. However, as explained below, other procedural barriers preclude Doe's claim from proceeding any further.

**B.     APA Final Agency Action**

Under the Administrative Procedure Act ("APA"), "agency action is subject to judicial review only when it is either: (1) made reviewable by statute; or (2) a 'final' action 'for which there is no other adequate remedy in a court.'" *Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313, 1315 (9th Cir. 2010) (citing 5 U.S.C. § 704)). Defendants assert I lack jurisdiction to consider Doe's challenges to his USCIS asylum application review under the APA—specifically, for Count One (unreasonable delay in violation of 5 U.S.C. § 706(1)), Count Two (violations of procedural requirements in violation of 5 U.S.C. § 706(2)(d)), and Count Three

5

1  (arbitrary and capricious agency action in violation of 5 U.S.C. § 706(2)(a) & (e))—as no final
2  administrative action has been taken. *See* Mot. at 9–10. Conversely, Doe claims that at least two
3  decisions by the USCIS constituted a "final action"—first, in June 2024, when the USCIS falsely
4  "closed" his asylum application; and second, in December 2024, when Doe received a C08 work
5  authorization card. *See* Oppo. at 5.

6  In support of their argument, defendants rely primarily on *Caccabang v. U.S. Citizen and
7  Immigration Services*, where the Ninth Circuit concluded that decisions on asylum applications by
8  the USCIS do not constitute final administrative action. 627 F.3d at 1318. The court emphasized
9  that the "indicium of finality in the administrative process" rests upon a showing of an "obligation
10 or the fixing of a legal relationship," which USCIS decisions do not provide. *Id.* at 1315. After
11 the USCIS transfers jurisdiction of an asylum application to the EOIR, the nonresident still can
12 still "renew their application[]" for asylum and "fully develop their arguments before the
13 immigration judge." *Id.* at 1316. The immigration judge similarly retains "unfettered authority to
14 modify or reverse USCIS's denial" of pending applications. *Id.* Therefore, denial of an
15 application before the USCIS is "not yet a final agency action" because of the nonresident's "right
16 to renew" their claims before an immigration judge. *Id.*

17 *Caccabang* controls this case. On August 22, 2025, the USCIS issued a Notice to Appear
18 for Doe, referring him to an immigration judge at the EOIR for a hearing on September 24, 2025.
19 *See* Dkt. No. 13 at 2. In its notice of denial, the USCIS stated that their decision was not final, and
20 that Doe would be able to present his case again before the EOIR. Doe thus retained a "right to
21 renew" and argue his case again, indicating that this decision does not constitute a "final agency
22 action" under *Caccabang*. 627 F.3d at 1316.

23 Circumstances have notably changed in this case, however. Since defendants filed their
24 motion to dismiss, Doe appeared before the EOIR and was granted a pre-conclusion voluntary
25 departure date of January 22, 2026. *See* Dkt. No. 33, Ex. A. The parties also agreed to waive their
26 rights to appeal the voluntary departure order. *See id.* "Except when certified to the Board [of
27 Immigration Appeals], the decision of the Immigration Judge becomes final upon waiver of appeal
28 or upon expiration of the time to appeal if no appeal is taken." 8 C.F.R. § 1003.39. Because a

6

1    voluntary departure date has been provided, final agency action has consummated at this point.
2    However, the Ninth Circuit has indicated that final agency action is a jurisdictional question that
3    must be determined at the time of filing. *See Doe 1 v. Mayorkas*, 505 F. Supp. 3d 893, 910 (N.D.
4    Cal. 2021) (citing *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 571 (9th Cir. 2019)).
5    Doe has failed to show that there was final agency action at the time of filing, so dismissal of the
6    APA claim for lack of subject matter jurisdiction is proper. Accordingly, Counts One, Two, and
7    Three of Doe's complaint are DISMISSED.

### C. Mootness

Finally, some of Doe's claims also fail on grounds of mootness. "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal citations omitted). The "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167 (2000) (cleaned up; internal citations omitted).

Defendants argue that Doe's unreasonable delay claim should be dismissed as moot, as the "relief [he] sought—adjudication of his asylum application"—was rendered by the USCIS upon referring his application to EOIR for removal proceedings. Mot. at 8. In response, Doe argues that his unreasonable delay claim is still "live," as the Court can still "declare USCIS's delay beyond the 180-day timeframe unlawful," "order USCIS to reconcile/correct its internal and A-file records," or "preclude reliance (in any forum) on erroneous USCIS entries." Oppo. at 4–5. Doe also alleges that both exceptions to the mootness doctrine apply. *Id.* at 5. With respect to voluntary cessation, Doe asserts that because defendants failed to show that it was "absolutely clear the challenged conduct cannot reasonably be expected to recur," his claim is not moot. *Id.* Similarly, Doe contends that the "capable of repetition yet evading review" exception applies since the "underlying defects (e.g., erroneous or unreconciled USCIS records" reasonably threaten recurrence. *Id.*

I agree with defendants that the unreasonable delay claim is moot. Count One of Doe's

7

1  complaint—alleging unreasonable delays by USCIS in violation of 5 U.S.C. § 706(1)—expressly
2  requests for an "[o]rder [of] completion of final asylum adjudication within 30 days, applying
3  correct legal standards and considering all submitted evidence." Compl. at 23. Since filing their
4  complaint, the USCIS analyzed Doe's application, concluded it was not sufficient to prove asylum
5  was necessary, and referred the case to the EOIR for removal proceedings. This is sufficient to
6  show that the claim is now moot.

7  Neither exception to the mootness doctrine saves Doe's claim. The voluntary cessation
8  doctrine does not apply since the USCIS cannot re-refer his case to immigration court, as it lacks
9  jurisdiction to revisit his asylum application. Nor does the capable of repetition yet evading
10 review exception apply—Doe has not established a credible fear that he will be subject to the same
11 procedural defects in the review of his asylum application. Because Doe's unreasonable delay
12 claim is moot, and no exception applies, his claim must be DISMISSED for lack of jurisdiction.

### D. Federal Torts Claim Act ("FTCA")

Doe's fourth and final cause of action is for violations of the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 1346(b). Compl. at 34. There, he seeks damages from the USCIS to "compensate [him] for economic losses caused by its negligent conduct, including . . . foreseeable medical, psychiatric treatment, and medication expenses; incurred and foreseeable lost income and employment opportunity losses; [and] [t]ravel, copying, and documentation expenses necessary for administrative appeals and this lawsuit." *Id.* at 43. But this is not a proper form of relief for a FTCA claim. The APA only permits injunctive or declaratory relief such as "taking . . . action on the application or petition of . . . a person," *see* 5 U.S.C. § 551(11)(C), but does not permit monetary relief. 5 U.S.C. § 702. Accordingly, because the United States waived sovereign immunity for monetary damages under the APA, Doe is barred from bringing any prospective claim for monetary damages. His FTCA claim must therefore be DENIED.

### CONCLUSION

While I acknowledge the real concerns Doe has about his immigration status, this does not overcome the reality that I do not have jurisdiction to hear his claims. Defendants' motion to

dismiss is GRANTED.

**IT IS SO ORDERED.**

Dated: December 30, 2025



William H. Orrick
United States District Judge